## CARR *v.* RYAN.

FRAUDULENT CONVEYANCES.—Where a party executes a mortgage upon his personal property, without consideration, and without a change of possession, and for the sole purpose of hindering and delaying his creditors; such a conveyance is fraudulent and void, and the mortgagee acquires no rights under the mortgage upon which he can base an action. The creditors of the mortagor may levy upon and sell the property covered by the mortgage.

ERROR to the District Court of Laramie County

The plaintiff in error in his official capacity as sheriff levied upon the property in controversy, by virtue of an execution against J. D. Brasel at the suit of one Sanford, and, as the property of Brasel, defendant in error replevined the property, basing his claim to it upon the ground:

1—That he was a mortgagee of the property.

2—That he was in possession under a verbal agreement, the effect of which possession and agreement was to constitute the property a pledge for the purpose of securing an indebtedness then existing in his favor against Brasel, the pledgor.

His right to maintain the action rested mainly upon the latter ground, as the mortgage was not then due. The court found in favor of defendant in error.

*W. R. Steele* and *E. W. Mann,* for plaintiff in error.

Upon the trial in the court below the plaintiff sought to maintain his action upon the ground that he was a mort-

gagee in possession of the property and therefore entitled to bring the action against the sheriff.

The defendant claimed that the plaintiff was not in possession, and that under the terms of the mortgage he was not entitled to the property in controversy, and therefore could not maintain this action.

The questions presented in this case depend almost entirely upon the evidence introduced upon the trial in the court below, and no separate argument upon the assignments of error will be necessary.

It appears from the testimony of the plaintiff that a mortgage of the property in controversy was given to him by J. D. Brasel. The plaintiff also testified, in his direct examination, that the mortgage property was delivered to him by J. D. Brasel. But upon cross-examination the following facts are made to appear:

1. That at the time of the commencement of the action Ryan was in Brasel's employ, driving a team.

2. That Ryan was paid wages by Brasel and that a portion of the money Ryan received for the work of the team was applied on his wages and the residue paid to Brasel.

3. That Brasel furnished a stable and feed for the team.

4. That since the commencement of the action the team in controversy had been worked by Brasel and that Ryan had received no compensation for the work.

It also appears from the testimony of E. H. Ingalls, that Ryan stated, previous to the commencement of the action, that the team he was driving belonged to Brasel. The testimony of the witness, Brasel, denies all the material statements heretofore referred to as appearing from Ryan's testimony, except the one in regard to the delivery of the property to Ryan, and the one in regard to the team in controversy having been used by Brasel since the commencement of the action. Brasel also attempts to show that he has paid Ryan something for the use of the team, but is unable to state any particular amount. It is there-

fore submitted on behalf of the plaintiff in error that the only testimony to support the case of the defendant in error is that of the witness J. D. Brasel. That his testimony is contradicted by that of the defendant in error and by the mortgage introduced in evidence. That the mortgage is the written contract of the parties, and, being recorded, is the one upon which the plaintiff in error had the right to rely in making his levy.

When by the terms of the mortgage the mortgagor is entitled to the possession of the mortgaged property, as against the mortgagee, until after condition broken, the mortgagee cannot maintain the action of replevin against a third party taking possession of the property, until after condition broken. *Frisbee* v. *Langworthy*, 11 Wis., 393; *Saxton* v. *Williams*, 15 Wis., 320; *Hull* v. *Carnley*, 11 N. Y., 501; *Curd* v. *Wunder*, 5 O. St., 92. It is therefore submitted on behalf of the plaintiff in error that the judgment of the district court should be reversed, with directions to render judgment for the defendant in the court below.

*W. P. Carroll* and *Johnson & Potter*, for defendant in error.

The mortgage stipulated, that until default in payment the mortgagor should remain in possession; but that stipulation was obligatory only in favor of mortgagor, and the right to the possession was a privilege which would not pass to the assignees of the mortgagor or his attaching creditors, in absence of such stipulation by mortgagee. The testimony of both parties to the contract shows the property was finally, and before levy, turned over to defendant in error by Brasel, as a pledge to secure his debt, and if so, of course he had the right to the immediate possession, and the levy of the sheriff was an unlawful invasion of his rights, and the sheriff's detention wrongful. 2 Pars. on Contracts, page 108 to 121; Id., page 119; Story on Bailment.

The findings of the court take the place of the verdict of the jury. Where a question is fairly submitted to the jury on a conflict of testimony the verdict will not be disturbed. As to the rule established by this court, see *W. U. T. Co.* v. *Monsear*, 1 Wyo., 17; *Bank* v. *Dayton*, 1 Id., 336; *Byrne* v. *Myers*, 1 Id., 352.

PECK, J. This is an action of replevin by Ryan against Carr. The petition is in common form, for the wrongful detention of two horses, a wagon and double harnesses from Ryan as the owner, and as entitled to the immediate possession of the property. Carr admitted the detention, but justified it by having taken the property under an execution, issued from the first district court against one J. D. Brasel to himself the sheriff of Laramie County, and holding it under that levy, alleging that at the time of the levy, Brasel owned the property, or had a leviable interest in it, or that it was subject to levy under the execution. Under the issue thus raised, the sheriff claimed that Ryan's possession was derived from Brasel, by an agreement void as to creditors, because intended to hinder, delay and defraud them. This is the only proposition that we shall consider in disposing of the judgment below, which was rendered for Ryan on a trial without a jury.

The testimony introduced by Ryan, consisting of a mortgage, his own and the evidence of Brasel, established the following facts, and subjects him to their legal effect. On and under date of the 14th of March, 1878, Brasel executed to Ryan a chattel mortgage of two double teams (of which one is the team in suit) and other property, conditioned to secure the payment of a note described as a note from Brasel to Ryan of the same date, due at one year, for $650, and interest, conferring upon Ryan in case of default, full power to take possession of the property, convert it into cash, and apply the net proceeds upon the note, accounting to Brasel for whatever surplus there might be; and reserving to Brasel the

full right of use and possession of the property until default. The mortgage was duly acknowledged on the same day, and filed for record on the 26th day of the same March. The note was in part fictitious; when cross-examined, Ryan admitted with unmistakable explicitness, that it was $100 in excess of its real consideration. Brasel was then insolvent, and this was known to Ryan; and sickness prevented the former from attending much to business. They testified in effect that, contemporaneously with the execution of the mortgage, and as a part of its transaction, it was arranged between them that Ryan should take possession and charge of the teams; and so retain them, until he had got out of them (which means out of their usufruct) the amount of the note; and that he took, and had since continuously retained possession and charge of them accordingly, excepting for about two days, when they were in Carr's possession under the levy. No other attempt at change of possession was made, than that Ryan took ostensible control of the teams, so far as to find work for them with outside customers or third persons, and to collect their earnings. When the mortgage was delivered, he was, and for about seven months next before, had been in Brasel's employment as a teamster at day wages, and so continued in his employment from the giving of the mortgage until the trial; during all this period, the teams were kept at Brasel's expense, the horses in his stable; the earnings from outside parties, Ryan applied to his wages and the care of the team, regularly handing the surplus to Brasel. As his teamster, drove or teamed with each of them, and when they were not out at work for third persons under hire for his benefit, they were at work for him on his premises; and Ryan neither received, nor attempted to obtain, nor was it the intention of himself or Brasel, that he should derive any benefit from, or apply any of the usufruct of them upon the note,—our unhesitating construction of these facts is, that there was no substantial or real change of possession from Brasel to Ryan; that Ryan's relation to Brasel in the matter was that

of an agent to his principal, not that of a creditor to his debtor ; that all that the former did about the teams after the giving of the mortgage, was, if ostensibly for himself, in fact for the benefit of the latter, and that the entire arrangement between those parties, and their action under it, were covinous in the interest of Brasel, were made and pursued with the intent to hinder, delay and defraud his creditors, and were therefore, void; consequently, the levy was good as against Ryan, and that he has no right of action.

The judgment is reversed with costs.

Judgment reversed.